AO 106 (Rev. 06/09) Application for a Search Warrant



FILED
JUL 0 6 2017
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
) Case No. **'17 MJ 2237**
Silver colored Apple iPhone – Model A1549, )
IMEI 359229066665888 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 and 963 | Importation of controlled substances and conspiracy to do the same. |

The application is based on these facts:
See Affidavit of Special Agent Prescilla Gonzales, which is hereby inorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Prescilla Gonzales, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/5/17

*Judge's signature*

City and state: San Diego, CA

Hon. William V. Gallo, Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Prescilla Gonzales, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic device:

    a. Silver, Apple, iPhone Model A1549 IMEI No. 359229066665888 (**Target Device**);

as described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section(s) 952, 960, and 963 as described in Attachment B. This search supports an investigation and prosecution of Alejandro Jesus ALVAREZ ("ALVAREZ") for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. Customs and Border Protection Officers seized the **Target Device** on June 2, 2017 from ALVAREZ incident to his arrest for attempting to import cocaine into the U.S. from Mexico. The Target Device is currently in the possession of Homeland Security Investigations (HSI) evidence vault located in San Diego, California.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

1

## EXPERIENCE AND TRAINING

5. I have been a Special Agent with the United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") since July 2010. I am currently assigned to the Office of The Deputy Special Agent in Charge, San Ysidro, California ("DSAC/SY"). Currently, I am investigating the illegal distribution of prescription drugs, by persons operating in Tijuana, Mexico and Southern California. The drugs are ordered over the internet, and shipped to purchasers throughout the United States.

6. I am a graduate of the Federal Law Enforcement Training Center (FLETC") Criminal Investigator Training Program ("CITP") and the Immigration and Customs Enforcement Special Agent Training ("ICESAT") course.

7. As a federal law enforcement officer for approximately 11 years, I have received formal training, as well as extensive on-the-job training, relative to the investigation of federal crimes involving human smuggling, kidnaping/extortion, firearms smuggling, and narcotics smuggling. I have participated in investigations which involved the use of electronic surveillance techniques. I have monitored or overheard numerous calls or meetings between informants or undercover agents, firearms traffickers, drug traffickers and money launderers. I have investigated firearms trafficking, illicit narcotics, controlled substances, money laundering, wire fraud and other crimes that have resulted in arrests, indictments, and convictions.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

2

b.   Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c.   Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d.   Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e.   Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f.   Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

9.   Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a.   tending to indicate efforts to import cocaine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

3

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

### Investigation Overview

10. On June 2, 2017 at approximately 12:58 a.m., ALVAREZ, a United States Citizen, attempted to enter the United States from the Republic of Mexico at the San Ysidro Port of Entry, San Diego, California, in primary lane number 12. ALVAREZ was the driver, registered owner, and sole occupant of a blue 2013 Hyundai Veloster ("the vehicle") bearing California license plates.

11. At approximately 12:58 a.m., a Customs and Border Protection (CBP) Officer was performing primary inspections at the San Ysidro Port of Entry (POE) when ALVAREZ, driving the vehicle, arrived at the officer's booth. The CBP officer asked ALVAREZ where he was going and ALVAREZ told the officer he was going home.

After the CBP Officer received two negative customs declarations from ALVAREZ the officer asked ALVAREZ to open his trunk. During the officer's inspection of the trunk, the officer lifted up the spare tire cover and observed multiple packages wrapped in black tape located where a spare tire would normally be placed. The CBP Officer closed the trunk and asked ALVAREZ again where he was going. ALVAREZ told the officer he was going to work at Costco located in San Diego, California. ALVAREZ told the officer the vehicle was his and he has owned it for six months. ALVAREZ was instructed to turn off the vehicle. ALVAREZ was then escorted to the security office.

12. During the secondary inspection of the vehicle, the CBP Seizing Officer found nineteen (19) black taped packages in the vehicle's trunk spare tire wheel well. The officer later found an additional package located in the vehicle's right side rear quarter panel. A CBP Officer removed a total of twenty (20) black taped packages. The packages contained a white powdery substance, weighing approximately 25.04 kilograms (55.20 pounds), which field tested positive for the characteristics of cocaine.

13. ALVAREZ is currently charged with violation of Title 21 U.S.C. Sections 952 and 960.

14. Following ALVAREZ's arrest, the **Target Device** has remained in the continuous custody of HSI. Specifically, the **Target Device** was stored in an HSI evidence vault in San Diego, California where it was secured with access limited to only government personnel. The **Target Device** was sealed in plastic evidence packaging and this sealed package is intact with no signs of any tampering. The **Target Device** has remained in essentially the same condition as it was when seized on June 2, 2017.

15. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device,** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the

facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of ALVAREZ, such as telephone numbers, made and received calls, contact names, e-mail addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**.

16. Based on my training and experience along with other law enforcement officers training and experience I am asking for the scope of the search to be from March 2, 2017 to June 3, 2017, it is reasonable for the coordination of a drug smuggling event to take approximately three months. For example, drug trafficking organizations (DTOs) recruit, evaluate, and supply load drivers with vehicles, and phones. In addition, drug smugglers are often asked to cross a vehicle several times to establish a pattern. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. This communication, both prior to, during and after the event is often accomplished/attempted via cellular telephone communication(s).

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the

device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

20. Specifically, as set forth above, given the amount of narcotics, their location inside of the defendant's vehicle in the spare tire compartment, coupled with the fact that ALVAREZ is the driver, sole occupant, and registered owner of the vehicle, I believe probable cause exists for the offense. Based on all of the facts and circumstances described above, there is probable cause to conclude that ALVAREZ used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952, 960, and 963.

21. Because the **Target Device** was promptly seized during the investigation of ALVAREZ's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by ALVAREZ continues

7

to exist on the **Target Device**. As stated above, I believe that the date range for this search is from March 2, 2017 to June 3, 2017.

22. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Prescilla Gonzales
HSI Special Agent

Subscribed and sworn to before me this ___5___ day of July, 2017.

_____
The Honorable William V. Gallo
United States Magistrate Judge

8

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

>Silver, Apple, iPhone
>Model A1549 IMEI No. 359229066665888
>**(Target Device)**

**Target Device** is currently in the possession of Homeland Security Investigations (HSI), stored in the HSI evidence vault in San Diego, California.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of March 2, 2017 to June 3, 2017:

a.  tending to indicate efforts to import cocaine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

d.  tending to identify travel to or presence at locations involved in the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections** 952, 960, and 963.